

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ERNESTO CARRILLO-RAMIREZ, JOSE DELGADO-PALOMERA, NESTOR DELGADO-ZAMORANO, OSCAR PACHECO-SANTANA, VICTOR SANCHEZ-JAIMES, and JOEL TAPIA-RUIZ,<br><br>    Plaintiffs,<br><br>v.<br><br>CULPEPPER ENTERPRISES, INC., KATHY CULPEPPER, D. BRANNON WHITE, NORTH AMERICAN LABOR SERVICES, INC., JON CLANCY, and CHERI CLANCY,<br><br>    Defendants. | Case No. 3:15cv 409CWR-FKB |

## COMPLAINT

### PRELIMINARY STATEMENT

1.  Plaintiffs are Mexican workers who were admitted to the United States to work under the H-2B temporary foreign worker visa program. Plaintiffs were employed by Defendants Kathy Culpepper and D. Brannon White, doing business as Culpepper Enterprises, Inc., ("Culpepper Enterprises") and by Jon Clancy and Cheri Clancy, doing business as North American Labor Services, Inc. ("NALS") (collectively referred to as "Defendants") in various past years. Plaintiffs seek redress for Defendants' violations of their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and Mississippi contract law.

2.  Plaintiffs are low-wage temporary workers brought by Defendants to the United States on time-limited work visas because of a claimed shortage of U.S. workers to fill

1

Defendants' available jobs. For years, Plaintiffs have left their homes and families in Mexico and spent considerable money and effort to come to the United States to work for Defendants.

3.  Defendants failed to properly pay Plaintiffs the federal minimum wage as required by the FLSA. Defendants also charged Plaintiffs an excessive amount for employer-arranged and -controlled housing, far in excess of the reasonable cost of that housing, and charged Plaintiffs for tools, protective gear, and uniforms. In addition, Defendants failed to pay Plaintiffs the proper FLSA overtime wage rate.

4.  Defendants breached employment contracts with Plaintiffs. Furthermore, Defendants breached their contracts with the U.S. Department of Labor ("DOL"), which were entered into for the benefit of Plaintiffs and/or such benefit was the direct result of the performance within the contemplation of Defendants and DOL, including guaranteeing the wages that Plaintiffs would be paid.

5.  Plaintiffs seek an award of money damages, declaratory and injunctive relief, statutory and/or actual damages, liquidated damages, punitive damages, and pre- and post-judgment interest for the injuries each of them suffered due to Defendants' violations of the law. Plaintiffs seek declaratory and injunctive relief to ensure that they and others are not subjected to similar practices in the future.

## JURISDICTION

6.  Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b), this action arising under the FLSA, and by 28 U.S.C. § 1331, this action arising under the laws of the United States. Jurisdiction over the contract claims is conferred by 28 U.S.C. § 1367 because these state claims are so closely related to the federal claim that they form part of the same case or controversy.

7.  Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

2

## VENUE

8.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). A substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

9.      At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2B temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), administered in part by the United States Department of Labor ("DOL").

10.     Plaintiff Ernesto Carrillo-Ramirez is an individual who maintains his permanent residence in Mexico.  Mr. Carrillo-Ramirez was employed by Defendants pursuant to an H-2B visa during the 2013 and 2014 seasons.

11.     Plaintiff Jose Delgado-Palomera is an individual who maintains his permanent residence in Mexico.  Mr. Delgado-Palomera was employed by Defendants pursuant to an H-2B visa during the 2013 and 2014 seasons.

12.     Plaintiff Nestor Delgado-Zamorano is an individual who maintains his permanent residence in Mexico. Mr. Delgado-Zamorano was employed by Defendants pursuant to an H-2B visa during the 2014 season.

13.     Plaintiff Oscar Pacheco-Santana is an individual who maintains his permanent residence in Mexico. Mr. Pacheco-Santana was employed by Defendants pursuant to an H-2B visa during the 2012, 2013, and 2014 seasons.

14.     Plaintiff Victor Sanchez-Jaimes is an individual who maintains his permanent residence in Mexico. Mr. Sanchez-Jaimes was employed by Defendants pursuant to an H-2B visa during the 2011, 2012, 2013 and 2014 seasons.

3

15.     Plaintiff Joel Tapia-Ruiz is an individual who maintains his permanent residence in Mexico. Mr. Tapia-Ruiz was employed by Defendants pursuant to an H-2B visa during the 2014 season.

16.     Defendant Culpepper Enterprises, Inc. is an administratively dissolved Mississippi corporation that conducts business in this district. Defendant Culpepper Enterprises, Inc. has contracts with the Mississippi Department of Transportation ("DOT") to cut grass and maintain the shoulders and medians of state highways in various counties in Mississippi. The Mississippi Secretary of State dissolved Defendant Culpepper Enterprises, Inc. on December 20, 2014. To date, Culpepper Enterprises has not requested reinstatement as a corporation.

17.     At all times relevant to this action, Defendant Culpepper Enterprises, Inc. was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it operated a landscaping and maintenance business and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

18.     Defendant Kathy Culpepper is an individual and the President, Vice-President, and Registered Agent of Defendant Culpepper Enterprises, Inc. Kathy Culpepper also serves as a Director of Defendant Culpepper Enterprises, Inc.

19.     Defendant D. Brannon White is an individual and the Treasurer of Defendant Culpepper Enterprises. D. Brannon White also serves as a Director of Defendant Culpepper Enterprises, Inc.

20.     Defendant Jon Clancy is an individual and is listed on ETA Form 9142 as the agent for North American Labor Services, Inc. ("NALS").

21.     Defendant Cheri Clancy is the registered agent and incorporator of NALS.

4

22.     Defendants Jon Clancy and Cheri Clancy do business as Defendant NALS.  The Mississippi Secretary of State administratively dissolved NALS on December 22, 2009.  To date, NALS has not requested reinstatement as a corporation.

23.     Doing business as Defendant NALS, at all times relevant to this action, Defendants Jon Clancy and Cheri Clancy were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that they operated a transnational labor recruitment business and provided recruitment and/or supervisory services to Defendant Culpepper Enterprises, Inc.

24.     Upon information and belief, Defendants Jon Clancy and Cheri Clancy's, doing business as Defendant NALS, is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

25.     At all times relevant to this action, Defendants NALS, Jon Clancy, and Cheri Clancy acted as agents for Defendants Culpepper Enterprises, Inc., Kathy Culpepper, and D. Brannon White, and acted within the scope of their agency.

26.     At all times relevant to this action, Plaintiffs were employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

27.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

## FACTS

### Defendants' Participation in the H-2B Visa Program

28.     An employer in the United States may sponsor foreign guest workers to perform unskilled labor of a temporary nature if DOL certifies that (1) there are insufficient available workers within the United States to perform the jobs, and (2) the employment of foreign guest

5

workers will not adversely affect the wages or working conditions of similarly situated U.S. workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

29.    An employer seeking the admission of H-2B workers must first file a temporary labor certification application with DOL. 20 C.F.R. § 655.20 (2008).[1] This application must include an attestation from the employer that it will abide by applicable regulatory requirements, including:

    a.  Payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. § 655.22(e) (2008); and

    b.  Limiting deductions from wages to only those that are "reasonable." DOL has determined that expenses related to the worker's procurement of a visa and travel from his home to the employer's worksite primarily benefit the employer and are not "reasonable" within the meaning of the FLSA. Accordingly, an employer may not shift these costs to the worker when doing so would effectively bring the worker's earnings below the applicable minimum and/or prevailing wage for the first workweek of employment. 20 C.F.R. § 655.22(g)(1) (2008); Field Assistance Bulletin No. 2009-2, August 21, 2009.

30.    Defendant Culpepper Enterprises, Inc. applied for temporary labor certifications to employ foreign workers in 2012, 2013, and 2014. These temporary labor certification applications identified Culpepper Enterprises as the prospective employer of H-2B workers and sought certification for the following time periods:

---

[1]    The DOL application for temporary employment certification of H-2B workers is titled the "ETA Form 9142B" and may be found at http://www.foreignlaborcert.doleta.gov/pdf/ETA_Form_9142B.pdf. The accompanying attestations are located on Form 9142B Appendix B.1, which can be found at http://www.foreignlaborcert.doleta.gov/pdf/Form_9142_AppendixB_1_012309.pdf.

    a.  April 10 to December 15, 2012;[2]

    b.  March 1 to December 15, 2013;[3] and

    c.  March 15 to December 15, 2014.[4]

31.    Each of these temporary labor certification applications contained an attestation pursuant to 20 C.F.R. § 655.20 that Defendant Culpepper Enterprises, Inc. would abide by applicable regulatory requirements pertaining to the H-2B temporary work program and federal and state laws, including the requirement that Defendant Culpepper Enterprises, Inc. pay Plaintiffs at least the H-2B prevailing wage.

32.    Each of these temporary labor certifications listed Defendant Jon Clancy and NALS as Defendant Culpepper Enterprises, Inc.'s agent. *See* Ex. B (2012 Culpepper 9142B Form); Ex. C (2013 Culpepper 9142B Form); Ex. D (2014 Culpepper 9142B Form.

33.    Defendant Kathy Culpepper signed each of these temporary labor certification applications as the "Owner/President" of Culpepper Enterprises, Inc. *See* Ex. B (2012 Culpepper 9142B Form); Ex. C (2013 Culpepper 9142B Form); Ex. D (2014 Culpepper 9142B Form).

34.    Defendant Jon Clancy signed each of these temporary labor certification applications as the agent of Culpepper Enterprises, Inc. *See* Ex. B (2012 Culpepper 9142B Form); Ex. C (2013 Culpepper 9142B Form); Ex. D (2014 Culpepper 9142B Form).

35.    DOL reviewed and ultimately certified or partially certified each of Defendant Culpepper Enterprises, Inc.'s temporary labor certification applications pursuant to 20 C.F.R. §

---

[2]  In 2012, Culpepper Enterprises, Inc. was granted partial certification to import 41 H-2B workers. *See* Ex. B (2012 Culpepper 9142B Form).

[3] In 2013, Culpepper Enterprises, Inc. requested and was granted certification to import 28 H-2B workers. *See* Ex. C (2013 Culpepper 9142B Form).

[4] In 2014, Culpepper Enterprises requested and was granted certification to import 38 H-2B workers. *See* Ex. D (2014 Culpepper 9142B Form).

655.23(b), allowing Defendant Culpepper Enterprises, Inc. to import H-2B workers to fill the labor needs set out in its temporary labor certification applications for the years 2012 to 2014.

36.    The DOL-approved temporary labor certification (ETA Form 9142B), the accompanying attestations, and the applicable regulatory requirements formed a contract between Defendants on the one hand and Plaintiffs on the other, with enforceable terms and conditions of employment, including an enforceable guarantee of wages no less than the federal minimum and H-2B prevailing wages.

37.    The DOL-approved labor certifications also formed valid and enforceable contracts between Defendants and DOL, which were entered into for the benefit of Plaintiffs and/or such benefit was the direct result of the performance within the contemplation of Defendant Culpepper Enterprises, Inc. and DOL, including the guarantee that Plaintiffs would not be paid less than the federal minimum and H-2B prevailing wages.

38.    Defendants and DOL both owed Plaintiffs a legal obligation and/or duty.

39.    Defendant Culpepper Enterprises Inc.'s and DOL's legal obligation and/or duty to Plaintiffs connect Plaintiffs with the contracts between Defendant Culpepper Enterprises, Inc. and DOL.

40.    Defendant Culpepper Enterprises, Inc. sponsored Plaintiffs' H-2B visas in order to fill its claimed labor shortages. Plaintiffs' H-2B visas allowed them to work only for Defendant Culpepper Enterprises, Inc.

### Defendants Underpaid Their H-2B Employees by Charging Them Recruitment and Travel Fees

41.    Plaintiffs spent considerable sums of money to obtain their H-2B work visas and travel from their hometowns in Mexico to the United States to work for Defendants in

Mississippi. Plaintiffs incurred these costs, which were primarily for the benefit of their employers.

42.     Prospective H-2B workers must undertake a lengthy process to obtain an H-2B visa sponsored by Defendant Culpepper Enterprises, Inc. Prospective workers must interview with Defendant Cheri Clancy in Mexico, pay her hundreds of dollars to be included on the recruitment list, travel to the city of Monterrey for appointments at the U.S. Consulate to obtain H-2B visas, and travel from Monterrey to Mississippi to begin work for Defendants.

43.     The majority of Plaintiffs maintain their permanent residences in and around the city of Tepic, in the Pacific coast state of Nayarit, Mexico, where they learned of the job opportunity with Defendants. Plaintiff Victor Sanchez-Jaimes maintains his permanent residence in Tijuana, in the state of Baja California, Mexico.

44.     Defendant Culpepper Enterprises, Inc. contracted with Defendants Jon and Cheri Clancy, doing business as Defendant NALS, to act as Culpepper Enterprises' agents to assist it in obtaining H-2B workers from Mexico, including the Plaintiffs.

45.     Defendant Culpepper Enterprises, Inc. chose to recruit workers in Mexico by utilizing an exclusive representative to recruit workers and assist them in the process of securing H-2B visas.

46.     Defendant Culpepper Enterprises, Inc. required prospective H-2B workers to go through its designated representative Cheri Clancy to seek employment through the H-2B program with Defendant Culpepper Enterprises, Inc.

47.     Defendant Culpepper Enterprises, Inc.'s designated representative Defendant Cheri Clancy charged prospective H-2B workers a recruitment fee each year of several hundred dollars per worker to have their names included on the list of workers requested by Defendant

Culpepper Enterprises, Inc. This money was never reimbursed to the Plaintiffs by Defendants or Defendants' agent(s).

48.     Plaintiffs were required to travel from their homes in and around Tepic, in the state of Nayarit, to Monterrey, in the state of Nuevo Leon, for their H-2B visa interviews at the U.S. Consulate. An interview with a visa officer at a U.S. Consulate or Embassy is a prerequisite to a prospective H-2B worker beginning work for the sponsoring employer. The Plaintiffs paid approximately $115 per person each year for their trips to Monterrey and for lodging during their stays in Monterrey, which was never reimbursed to them by Defendants.

49.     Following the approval of their H-2B visas by the U.S. Consulate, Plaintiffs traveled by bus from Monterrey, Mexico to the Jackson, Mississippi area to begin work for Defendants.

50.     Plaintiffs were required to pay for one-way travel from Monterrey, Mexico to the housing complex arranged and controlled by Defendants outside Jackson, Mississippi, and to pay a border crossing fee when they entered the United States. The Plaintiffs paid approximately $155 per person each year in travel and border crossing expenses to travel from Monterrey, Mexico to Defendants' chosen housing site outside Jackson. This money was never reimbursed to Plaintiffs by Defendants.

51.     The expenses incurred by Plaintiffs to come work for Defendants, as set out in paragraphs 47-50, were primarily for the benefit of Defendants within the meaning of the FLSA, 29 C.F.R. §§ 531.32(c) and 778.217.

52.     Defendants did not reimburse Plaintiffs for the expenses they incurred to come work for Defendants, as set out in paragraphs 47-50, above.

53.     The costs described in paragraphs 47-50 operated as *de facto* involuntary deductions from, and/or a kickback of, Plaintiffs' first workweek's wages.

54.     The above *de facto* deductions for costs that were primarily for the benefit of Defendants caused the wages of Plaintiffs to fall below the minimum level required by the FLSA and the federal prevailing wage mandated under the H-2B program during their first workweek.

### Defendants Underpaid Their H-2B Employees by Failing to Pay Them the Prevailing Wage or the Correct Overtime Wage

55.     In each of the temporary labor certifications filed by Defendants Culpepper Enterprises, Inc. and Jon Clancy and certified or partially certified by DOL, Defendant Culpepper Enterprises, Inc. attested pursuant to 20 C.F.R. § 655.20 that it would abide by applicable regulatory requirements pertaining to the H-2B temporary work program and federal and state laws, including the requirement that Defendant Culpepper Enterprises, Inc. pay Plaintiffs at least the H-2B prevailing wage.

56.     Employers of H-2B workers are required to pay them at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. § 655.22(e) (2008).

57.     In 2012, DOL certified Defendant Culpepper Enterprises, Inc. to employ 48 H-2B workers at a prevailing wage of $10.26 per hour and an overtime rate of $ 15.39 per hour.

58.     In 2012, Defendant Culpepper Enterprises, Inc. paid its H-2B workers, including Plaintiffs, $7.25 per hour and an overtime rate of $10.88 per hour, a difference from the certified prevailing wage of $3.01 per hour at the regular rate and $4.51 per hour at the overtime rate.

59.     In 2013, DOL certified Defendant Culpepper Enterprises, Inc. to employ 28 H-2B workers at a prevailing wage of $8.25 per hour and an overtime rate of $12.38 per hour.

60.    In 2013, Defendant Culpepper Enterprises, Inc. paid its H-2B workers, including Plaintiffs, $7.25 per hour and an overtime rate of $10.88 per hour, a difference from the certified prevailing wages of $1.00 per hour at the regular rate and $1.50 per hour at the overtime rate.

61.    In 2014, DOL certified Defendant Culpepper Enterprises, Inc. to employ 38 H-2B workers at a prevailing wage of $11.11 per hour and an overtime rate of $16.67 per hour.

62.    In 2014, Defendant Culpepper Enterprises, Inc. paid its H-2B workers, including Plaintiffs, $7.25 per hour and an overtime rate of $10.88 per hour, a difference from the certified prevailing wages of $3.86 per hour at the regular rate and $5.79 per hour at the overtime rate.

63.    By paying their H-2B workers an improperly low overtime wage, Defendants violated the FLSA. 29 U.S.C. § 207(a).

64.    By paying its H-2B workers less than the H-2B prevailing wage and the prevailing overtime wage, Defendants breached their contracts with Plaintiffs.

65.    In the alternative, by paying its H-2B workers less than the H-2B prevailing wage and the prevailing overtime wage, Defendants breached their contracts with DOL, which were entered into for the benefit of Plaintiffs and/or such benefit was the direct result of the performance within the contemplation of Defendant and DOL.

**Defendants Underpaid Their H-2B Employees by Overcharging Them for Housing**

66.    Plaintiffs lived in an apartment complex called "The Vineyard" in Brandon, Mississippi, on the outskirts of Jackson, in the 2014 season. Defendants located, arranged for, and controlled the housing for Plaintiffs.

67.    Plaintiffs shared apartments with other Culpepper Enterprises, Inc. H-2B workers. Two-bedroom apartments were shared by five workers, with one worker sleeping in the living

room. Defendants managed specific details of the Plaintiffs' housing, including assigning them to live in specific apartments and distributing keys to those apartments.

68.     Defendants deducted approximately $120 per worker in 2013 and $130 per worker in 2014 every two weeks from Plaintiffs' paychecks for housing. The housing deduction was made from each worker's check irrespective of the number of paychecks in a given month.

69.     Defendants also deducted $50.00 from Plaintiffs' final paychecks for a housing cleaning fee, although Defendants also required Plaintiffs to clean the apartments at the end of the season. Defendants never reimbursed Plaintiffs for this fee.

70.     The amounts deducted from Plaintiffs' paychecks for housing were higher than the market value of such housing.

71.     The amounts deducted from Plaintiffs' paychecks for housing were not reasonable within the meaning of the FLSA. 29 C.F.R. § 531.3(b).

72.     The unreasonable housing deductions contributed to the wages of Plaintiffs falling below the minimum level required by the FLSA and the federal prevailing wage mandated under the H-2B program during various workweeks, including the first workweek.

### Defendants Underpaid Their H-2B Employees by Charging Them for Tools, Protective Gear, and Uniforms

73.     Plaintiffs performed maintenance and groundskeeping work along the shoulders and in the medians of state highways in various counties in Mississippi.

74.     This work reasonably requires the use of certain tools of the trade and protective gear by each worker. Defendants also required their H-2B employees to wear a uniform.

75.     The amounts deducted (or made via *de facto* deductions) from Plaintiffs' paychecks for these tools of the trade, protective gear, and uniforms were primarily for the benefit or convenience of Defendant. 29 C.F.R. § 531.3(d)(2).

13

76. These deductions contributed to the wages of Plaintiffs falling below the minimum level required by the FLSA and the federal prevailing wage mandated under the H-2B program during various workweeks, including the first workweek.

**COUNT I**

**FAIR LABOR STANDARDS ACT**

77. All the foregoing allegations are incorporated by reference as if set forth fully herein.

78. Pursuant to 29 U.S.C. § 216(b), the Plaintiffs have consented in writing to be Plaintiffs in this FLSA action. Their written consents are attached hereto as Ex. A.

79. This count sets forth a claim for declaratory relief and damages for each Defendant's violation of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA").

80. Defendants violated the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25, the federal minimum wage, for every compensable hour of labor they performed during each workweek they were employed.

81. Defendants' violations of the FLSA resulted, in part, from Defendants' failure to reimburse Plaintiffs for certain pre-employment expenses they incurred which were primarily for Defendants' benefit, reducing Plaintiffs' wages below the minimum wage for the first workweek.

82. Defendants' violations of the FLSA also resulted, in part, from Defendants' unreasonable deductions from Plaintiffs' wages for housing. 29 C.F.R. § 531.3(b).

83. Defendants' violations of the FLSA also resulted, in part, from Defendants' deductions from Plaintiffs' wages for tools, protective gear, and uniforms that were primarily for the benefit or convenience of Defendants. 29 C.F.R. § 531.3(d)(2).

84.     Defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay Plaintiffs the proper overtime wage rate.

85.     Defendants' failure to pay Plaintiffs their federally mandated minimum and overtime wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.     As a consequence of Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid minimum and overtime wages, plus an additional equal amount in liquidated damages, the costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**BREACH OF EMPLOYMENT CONTRACT**

87.     All the foregoing allegations are incorporated by reference as if fully set forth herein.

88.     This count sets forth a claim for damages resulting from Defendants' breaches of their employment contracts with Plaintiffs.

89.     The terms and conditions provided in the temporary labor certification (ETA Form 9142B), its accompanying attestations, and the law and regulations applicable to the H-2B program constituted the employment contracts between Plaintiffs and Defendants.

90.     Plaintiffs satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with Defendants.

91.     Defendants breached the employment contracts with Plaintiffs by compensating the Plaintiffs below the federal minimum wage and applicable H-2B prevailing wages for their work.

92. Defendants' breach of the employment contracts caused Plaintiffs substantial injuries, for which Plaintiffs are entitled to actual and consequential damages, punitive damages, and prejudgment interest, and reasonable attorneys' fees.

## COUNT III

### THIRD-PARTY BENEFICIARY CLAIM FOR BREACH OF CONTRACT

93. All the foregoing allegations are incorporated by reference as if fully set forth herein.

94. This count is pled in the alternative to Count II and sets forth a third-party beneficiary claim for damages resulting from the breach of the contracts between the U.S. Department of Labor (DOL) and Defendants.

95. The temporary labor certifications (ETA Form 9142B) filed by Defendant Culpepper Enterprises, Inc. and subsequently approved by DOL, constitute valid and enforceable contracts.

96. These contracts were entered into for the benefit of Plaintiffs and/or such benefit was the direct result of the performance within the contemplation of Defendants and DOL.

97. Both the Defendants and DOL owed Plaintiffs a legal obligation and/or duty.

98. Defendants' and DOL's legal obligation and/or duty to Plaintiffs connect Plaintiffs with the contracts between Defendants and DOL.

99. Plaintiffs are third-party beneficiaries of the contracts Defendants entered into with DOL.

100. Defendants breached its contracts with DOL by compensating the Plaintiffs below the federal minimum wage and applicable H-2B prevailing wages for their work.

16

101.    Defendants' breach of its contracts with DOL caused the Plaintiffs substantial injuries, for which Plaintiffs are entitled to actual and consequential damages and prejudgment interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray this Court will enter an order:

1. Entering a declaratory judgment that each Defendant violated Plaintiffs' rights under the FLSA, that each Defendant breached each individual contract with each Plaintiff, and that each Defendant breached each contract with the Department of Labor to which Plaintiffs were third-party beneficiaries;

2. Permanently enjoining each Defendant from further violations of the FLSA;

3. Granting judgment in favor of Plaintiffs and against each Defendant, jointly and severally, on Plaintiffs' claims under the FLSA and awarding each of them the amount of his unpaid minimum and overtime wages, along with an equal amount of liquidated damages;

4. Granting judgment in favor of Plaintiffs against each Defendant, jointly and severally, for breach of the employment contracts with Plaintiffs, and awarding each of the Plaintiffs his actual and consequential damages, punitive damages, and prejudgment interest;

5. Granting judgment in favor of third-party beneficiary Plaintiffs against Defendants, jointly and severally, for breach of the employment contracts with the U.S. Department of Labor, and awarding each of the Plaintiffs his actual and consequential damages, punitive damages, and prejudgment interest;

6. Awarding Plaintiffs the cost of this action;

7. Awarding Plaintiffs a reasonable attorney's fee; and

8.  Granting such relief as this Court deems just and equitable.

Dated this 5th day of June, 2015.

Respectfully submitted,

*Jody E. Owens II*

Jody E. Owens II (MSB #102333)
jody.owens@splcenter.org
Southern Poverty Law Center
111 E. Capitol Street, Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (601) 948-8885

Sarah M. Rich* (TX Bar No. 24085551)
sarah.rich@splcenter.org
James M. Knoepp* (GA Bar No. 366241)
jim.knoepp@splcenter.org
Daniel Werner* (GA Bar No. 422070)
daniel.werner@splcenter.org
Southern Poverty Law Center
1989 College Avenue NE
Atlanta, GA 30317
Telephone: (404) 521-6700
Facsimile: (404) 221-5857

*Application for admission *pro hac vice*
forthcoming.

ATTORNEYS FOR PLAINTIFFS